UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

FILED

2006 MAR 31  P 2: 24

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

HANK MAURICE EVANS,

        Petitioner,

vs.    Case No. 3:04-cv-602-J-20HTS

JAMES R. MCDONOUGH,[1] et al.,

        Respondents.

_____

**ORDER**

**I. Status**

Petitioner, an inmate of the Florida penal system who is proceeding *pro se*, initiated this action by filing a Petition (Doc. #1) for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on July 21, 2004. He challenges his 1999 state court (Duval County) conviction for aggravated battery on a pregnant woman on the ground that his attorney was ineffective for failing to advance evidence that would have mitigated Petitioner's guilt. Specifically, he contends that counsel should have presented evidence of the

---

[1] James R. McDonough, the Interim Secretary of the Florida Department of Corrections, is substituted as the proper party Respondent for James V. Crosby, Jr., pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

victim's propensity for violence to support Petitioner's claim of self-defense.

On September 10, 2004, Respondents filed an Answer to Petition for Writ of Habeas Corpus (Doc. #7) (hereinafter Response). Petitioner's Opposition to the Respondents' Answer to Petition for Writ of Habeas Corpus (Doc. #10) was filed on September 29, 2005. On October 31, 2005, the Court entered an order requiring the parties to address whether portions of Petitioner's ground for relief were procedurally barred. Respondents' Supplemental Answer to Petition for Writ of Habeas Corpus (Doc. #14) was filed on November 30, 2005. Petitioner's Reply to Respondents' Supplemental Answer to Petition for Writ of Habeas Corpus (Doc. #20) was filed on January 3, 2006. Thus, this case is now ripe for review.[2]

## II. Evidentiary Hearing

This Court has carefully reviewed the record and concludes Petitioner is not entitled to an evidentiary hearing. A habeas corpus petitioner is entitled to an evidentiary hearing in federal court if he alleges facts which, if proven, would entitle him to habeas corpus relief. Smith v. Singletary, 170 F.3d 1051, 1053-54 (11th Cir. 1999) (citation omitted); Cave v. Singletary, 971 F.2d 1513, 1516 (11th Cir. 1992) (citing Townsend v. Sain, 372 U.S. 293 (1963)). Here, the state court held an evidentiary hearing and the

---

[2] The state court procedural history is set forth in the Response. See Response at 2-3. Respondents assert, and this Court agrees, that this action was timely filed. Id. at 3.

pertinent facts of the case are fully developed in the record before the Court. Smith, 170 F.3d at 1054 (stating that a district court does not need to conduct an evidentiary hearing "if it can be conclusively determined from the record that the petitioner was not denied effective assistance of counsel"). No evidentiary proceedings are required in this Court. See High v. Head, 209 F.3d 1257, 1263 (11th Cir. 2000) (citing McCleskey v. Zant, 499 U.S. 467, 494 (1991)), cert. denied, 532 U.S. 909 (2001). The Court can "adequately assess [Petitioner's] claim[s] without further factual development." Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004). Therefore, an evidentiary hearing will not be conducted by this Court.

### III.  Standard of Review

On April 24, 1996, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 (hereinafter AEDPA). Since this action was filed after the effective date of AEDPA, the Court will analyze Petitioner's claim under 28 U.S.C. § 2254(d), as amended by AEDPA. Nelson v. Alabama, 292 F.3d 1291, 1294-95 (11th Cir. 2002), cert. denied, 538 U.S. 926 (2003); Fugate v. Head, 261 F.3d 1206, 1215 n.10 (11th Cir. 2001), cert. denied, 535 U.S. 1104 (2002); Wilcox v. Florida Dep't of Corr., 158 F.3d 1209, 1210 (11th Cir. 1998), cert. denied, 531 U.S. 840 (2000).

The Eleventh Circuit has described the standard of review under AEDPA and has explained:

> The Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this [action] and limits our review of the decisions of the state courts:
>
>> A federal court may not grant a petition for a writ of habeas corpus to a state prisoner on any claim that has been adjudicated on the merits in state court unless the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court.
>
> Clark v. Crosby, 335 F.3d 1303, 1307-08 (11th Cir. 2003) (citations omitted). A general framework of substantial deference governs our review of every issue that the state courts have decided:
>
>> [A] state-court decision can be "contrary to" this Court's clearly established precedent in two ways. First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours.
>
>> . . . .

> [A] state-court decision can involve an "unreasonable application" of this Court's clearly established precedent in two ways. First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.
>
> Williams v. Taylor, 529 U.S. 362, 405-07, 120 S.Ct. 1495, 1519-20, 146 L.Ed.2d 389 (2000).

Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1141 (11th Cir.), cert. denied, 126 S.Ct. 803 (2005).

The Eleventh Circuit addressed the application of the "contrary to" clause in reviewing a state court adjudication:

> In applying the "contrary to" prong of AEDPA, we have recognized that where no Supreme Court precedent is on point, "we cannot say that the state court's conclusion . . . is contrary to clearly established Federal law as determined by the U.S. Supreme Court." McIntyre v. Williams, 216 F.3d 1254, 1258 (11th Cir. 2000).

Washington v. Crosby, 324 F.3d 1263, 1265 (11th Cir.), cert. denied, 540 U.S. 965 (2003).

Under 28 U.S.C. § 2254(d)(2), this Court must determine whether the state court's adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Furthermore, AEDPA "also directs that a presumption of correctness be afforded factual findings of state courts, which may be rebutted only by clear and convincing evidence. See id. at § 2254(e)(1). This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002), cert. denied, 538 U.S. 906 (2003). See Peoples v. Campbell, 377 F.3d 1208, 1227 (11th Cir. 2004), cert. denied, 125 S.Ct. 2963 (2005). Thus, to the extent that Petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under the new § 2254(d).

## IV. The Applicable Law

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citations omitted). The Eleventh Circuit captured the essence of an ineffectiveness claim:

> [A] petitioner must show that his lawyer's performance fell below an "objective standard of reasonableness" and that the lawyer's deficient performance prejudiced the petitioner. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Establishing these two elements is not easy: "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994)).
>
> For assessing a lawyer's performance, Chandler v. United States, 218 F.3d 1305 (11th Cir. 2000) (en banc) cert. denied, 531 U.S. 1204, 121 S.Ct. 1217, 149 L.Ed.2d 129 (2001), sets out the basic law: "Courts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." Id. at 1314 (internal marks omitted). . . . Our role in reviewing an ineffective assistance claim is not to "grade" a lawyer's performance; instead, we determine only whether a lawyer's performance was within "the wide range of professionally competent assistance." See Strickland, 104 S.Ct. at 2066.
>
> The inquiry into whether a lawyer has provided effective assistance is an objective

7

> one: a petitioner must establish that no objectively competent lawyer would have taken the action that his lawyer did take." See Chandler, 218 F.3d at 1315. . . .
>
> A petitioner's burden of establishing that his lawyer's deficient performance prejudiced his case is also high. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test." Strickland, 104 S.Ct. at 2067. Instead, a petitioner must establish that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given adequate assistance. See id. at 2068.

Van Poyck v. Florida Dep't of Corrections, 290 F.3d 1318, 1322-23 (11th Cir. 2002) (per curiam) (footnotes omitted), cert. denied, 537 U.S. 812 (2002), 537 U.S. 1105 (2003).

In sum, "[w]ithout proof of both deficient performance and prejudice to the defense, . . . it could not be said that the sentence or conviction 'resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable,' and the sentence or conviction should stand." Bell v. Cone, 535 U.S. 685, 695 (2002) (internal citation omitted) (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984)).

### V. The Testimony at Trial

In Petitioner's brief on direct appeal, Petitioner's appellate counsel thoroughly summarized the trial testimony as follows:

> Megan Presha testified that on the evening of December 4, 1998, appellant spent some of the evening at her house. (III-308-

8

311). After appellant left around 11:00 a.m., Ms. Presha went to the ATM to get money but was told there was none in there. (III-312) . . . . Later in the day, Ms. Presha had an argument with appellant concerning why he stole her money. (III-316-317). Appellant denied it. (III-318-319). Later in the day, Ms. Presha was driving her mother's car with Dalton Presha, Sheena Smith, and L[a]tesha Ethridge as passengers. (III-321). At the red light at 33rd and Moncrief, Ms. Presha saw appellant in a blue BMW behind her. (III-322). Ms. Presha again yelled about her money and appellant again denied any involvement with it. (III-323). As Ms. Presha continued on Interstate 95, appellant was still behind her. She got off I-95 at Union, got off on Eighth, got to Myrtle Avenue and put on her blinker by Kings Road. Appellant followed and then turned down the street before she did. As she was going down Grothe Street, appellant's car came towards hers hitting them head-on. Appellant then got out and tried to open the driver's door to Ms. Presha's vehicle. After she got out of the car on the passenger's side, appellant caught her and hit her in the face four to five times. She then fell to the ground. Appellant then kicked her in her stomach although she was advising him not to since she was pregnant. According to Ms. Presha, appellant knew that she was pregnant at the time. (III-323-328). Appellant then got into his car and left. (III-330). Ms. Presha indicated that she received a "sprung" toe as a result of the beating. (III-330).

Latesha Ethridge, Megan Presha's best friend, testified that she was with Ms. Presha when she encountered appellant. (III-355-356). On Grothe Street, appellant's vehicle hit theirs. She saw appellant hitting Ms. Presha and, after she fell, kicking her. (III-359). She called 911. (III-370). Photographs of the damaged vehicle were introduced into evidence. (III-379).

9

Sheena Smith, Ms. Presha's sister, also testified that appellant ran into the car she was riding in. (III-387). She witnessed appellant hit her sister and kick her. (III-387-388).

Judy Smith, Ms. Presha's mother, testified that her green 1995 Mercury Sable was not damaged prior to Ms. Presha borrowing it. (IV-408-411). After the incident, the whole front end of the vehicle was crashed. (IV-410). Ms. Smith testified she had spoken to appellant after the incident. He denied hitting the car, indicating instead that Megan Presha ran into him. (IV-413).

Walter Clyde Bryant, Jr., testified that he lived on Grothe Street. On December 5, 1998, he heard a crash. A BMW struck another car head-on. The driver then began hitting the woman. (IV-425-429). He overheard the woman saying that she was pregnant. (IV-429).

The testimony of Tom Revercomb had been perpetuated. (IV-452-453). In his perpetuated testimony, he indicated that U.S. Security Insurance paid a claim to Ms. Smith for damage to her 1995 Mercury Sable sedan of $2,533. (IV-454-461). The new damage to the vehicle was all front-end damages. (IV-461).

Officer Coburn responded to the collision on Grothe Street. (IV-469-470). She identified State's Exhibits 2, 3, and 4 as the vehicle Ms. Presha had been driving. (IV-471).

At the close of the State's case, appellant moved for a judgment of acquittal. The motion was denied. (IV-481-488). In denying the motion for judgment of acquittal, the court indicated it was taking into consideration the relative size difference between appellant and the victim. Appellant objected since there had been no testimony as to appellant's physical size on the date of the incident. (IV-489-490). The court also indicated that "it's virtually almost never a

10

fair fight between a man and a woman anyway." (IV-495-496). Appellant objected. (IV-496).

Ronald Tim Johnson, an employee of Osteen Volvo and Volkswagen, identified various defense exhibits as one of the vehicles which had been on their lot for sale. (IV-499-501). When he observed the vehicle in December of 1998, there was no damage to the vehicle that was visible. There was, however, substantial damage to the bottom of the vehicle and the rear-end which required $2196.00 to repair. (IV-505-506).

Alberta Wells, appellant's mother, identified Defense Exhibit F, E, B, A, and C as the car her son had been driving. A conversation Ms. Wells had with Ms. Presha on the night of the incident was the subject of a proffer. (IV-517-523). The court allowed Ms. Wells to testify that during her conversation with Ms. Presha, she did not tell her that appellant had hit or beat her. (IV-524). After this, Ms. Wells also inspected appellant's vehicle and did not observe any front-end damage to the car. (IV-525). She did, however, see a few scratches on the back of the bumper. (IV-525). On proffer, Ms. Wells testified that appellant told her he did not run into the car. (IV-532). Ms. Wells also testified that in her conversation with Ms. Presha regarding Dalton Presha, it was Ms. Presha who brought up the subject. (IV-535-536).

Ex. E[3] at 2-6.

## VI. Findings of Fact and Conclusions of Law

Petitioner claims that his attorney was ineffective for failing to advance evidence that would have mitigated Petitioner's

---

[3] The Court hereinafter refers to the Exhibits to State's Response to Petition for Writ of Habeas Corpus (Doc. #8), filed September 10, 2004, as "Ex."

11

guilt. Specifically, he contends that counsel should have presented evidence of the victim's propensity for violence to support Petitioner's claim of self-defense.

Petitioner raised this claim in state court in a motion for post-conviction relief filed pursuant to Fla. R. Crim. P. 3.850. However, as noted in the Court's Order (Doc. #13), filed October 13, 2005, Petitioner raised this claim in state court solely in terms of counsel's ineffectiveness for failing to present evidence of the victim's criminal record. See Ex. H at 7-8, 14. In the Petition before this Court, Petitioner has added numerous additional facts in support of his claim, and now asserts that counsel should have presented other evidence of the victim's propensity for violence.

A petition for writ of habeas corpus should not be entertained unless the petitioner has first exhausted his state remedies. See Castille v. Peoples, 489 U.S. 346, 349, reh'g denied, 490 U.S. 1076 (1989); Rose v. Lundy, 455 U.S. 509 (1982).

> [I]n order to ensure that state courts have the first opportunity to hear all claims, federal courts "have required a state prisoner to present the state courts with the same claim he urges upon the federal courts." Picard, 404 U.S. at 275, 92 S.Ct. at 512 (citations omitted). While we do not require a verbatim restatement of the claims brought in state court, we do require that a petitioner presented his claims to the state court "such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation." Kelley, 377

12

> F.3d at 1344-45 (citing <u>Picard</u>, 404 U.S. at 277, 92 S.Ct. at 513).

<u>McNair v. Campbell</u>, 416 F.3d 1291, 1302 (11th Cir. 2005).

Generally, a federal habeas petition should be dismissed if the petitioner has failed to exhaust state remedies. <u>See</u> <u>Keeney v. Tamayo-Reyes</u>, 504 U.S. 1, 10 (1992). A federal court need not dismiss the petition to allow for exhaustion of state remedies, however, if such a dismissal would be futile.

> [I]f the petitioner simply never raised a claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred due to a state-law procedural default, the federal court may foreclose the petitioner's filing in state court; the exhaustion requirement and procedural default principles combine to mandate dismissal.

<u>Bailey v. Nagle</u>, 172 F.3d 1299, 1303 (11th Cir. 1999) (per curiam) (citing <u>Snowden v. Singletary</u>, 135 F.3d 732, 737 (11th Cir.), <u>cert. denied</u>, 525 U.S. 963 (1998)).

Here, it would be futile for this Court to dismiss the unexhausted portions of Petitioner's claim because all of the facts in support of his claim should have been raised in Petitioner's Rule 3.850 motion. If Petitioner attempted to raise these additional facts in another Rule 3.850 motion, the motion would be subject to dismissal as successive and untimely. Thus, Petitioner's claims under ground one have been procedurally defaulted, except to the extent that he claims counsel was

ineffective for failing to present evidence of the victim's criminal record. See Bailey, 172 F.3d at 1305.

"Procedural defaults in state courts will foreclose federal court review, absent a showing of cause and prejudice." Parker v. Sec'y for the Dep't of Corr., 331 F.3d 764, 770 (11th Cir. 2003) (citing Wainwright v. Sykes, 433 U.S. 72 (1977)), cert. denied, 540 U.S. 1222 (2004). "[A] petitioner may gain federal review of an otherwise procedurally defaulted claim if he can demonstrate both cause excusing the default and actual prejudice resulting from the bar." Hill v. Jones, 81 F.3d 1015, 1022-23 (11th Cir. 1996) (citations omitted), cert. denied, 519 U.S. 1119 (1997).

"[A] federal court may also grant a habeas petition on a procedurally defaulted claim, without a showing of cause or prejudice, to correct a fundamental miscarriage of justice." Fortenberry v. Haley, 297 F.3d 1213, 1222 (11th Cir. 2002) (per curiam) (citing Murray v. Carrier, 477 U.S. 478, 495-96 (1986)), cert. denied, 538 U.S. 947 (2003). The fundamental miscarriage of justice exception is only available in extraordinary cases upon a showing of "'actual' innocence" rather than mere "'legal' innocence." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (citations omitted), cert. denied, 535 U.S. 926 (2002).

Here, Petitioner has not shown both cause and prejudice. Furthermore, he has not demonstrated that he meets the fundamental miscarriage of justice exception. Thus, the Court will not address

14

his claims under ground one, with the exception of his contention that counsel was ineffective for failing to present evidence of the victim's criminal record.

As noted previously, the exhausted portion of Petitioner's claim was raised in Petitioner's Rule 3.850 motion, and the trial court adjudicated it as follows:

> In the instant Motion, Defendant raises three grounds for relief, all of which are premised upon allegations of ineffective assistance of counsel. In order to prevail on a claim of ineffective assistance of counsel, Defendant must show that: (1) counsel's performance was outside the wide range of reasonable professional assistance, and (2) counsel's deficient performance prejudiced the defense, *i.e.* that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984); <u>Cherry v. State</u>, 659 So.2d 1069, 1072 (Fla. 1995); <u>Knight v. State</u>, 394 So. 2d 997 (Fla. 1981); <u>Reaves v. State</u>, 593 So.2d 1150 (Fla. 1st DCA 1992). Further, the "standard is reasonably effective counsel, not perfect or error-free counsel." <u>Coleman v. State</u>, 718 So.2d 827, 829 (Fla. 4th DCA 1998). Prejudice is demonstrated if the deficiency was sufficient to render the result unreliable. <u>Gorham v. State</u>, 521 So.2d 1067 (Fla. 1988).
>
> . . . .
>
> In ground three of the instant Motion, Defendant claims counsel rendered ineffective assistance by failing to present evidence during trial to mitigate Defendant's guilt. Defendant contends counsel should have presented similar fact evidence that the victim, Megan Presha, had a criminal record.

15

Ms. Buncome-Williams[4] testified at the evidentiary hearing that she was aware that Ms. Presha had a criminal record at the time of Defendant's trial. (Ex. "C," pg. 31.) When asked why she did not question Ms. Presha about her criminal record, Ms. Buncome-Williams responded as follows:

> [j]ust in case of the fact that the State could only ask my client about convictions of crimes of dishonesty and felonies is the same that applies to witnesses in a case. Ms. Presha, as far as I could see, had no felony convictions so I could not impeach her in that regards. As a lawyer, we cannot ask a person if they have felony convictions without a good faith basis and I didn't have that.
>
> Secondly, she didn't have any crimes of dishonesty in the case so I couldn't ask her about any crimes of dishonesty.
>
> In regards to the breach of the peace, fighting and the battery in this case, Mr. Evans was not the victim in either of those cases and based on the fact that Mr. Evans was not taking the stand indicating that she was the one who had approached him and he was simply defending himself and, therefore, I would have then been able to presented [ sic] the fact that she is an aggressor at times, but that was never an option given because Mr. Evans decided not to testify.

(Ex. "C," pg. 32.) Ms. Buncome-Williams, further, testified as follows:

---

[4] Ms. Buncome-Williams represented Petitioner at trial.

16

> Q.: Did you ever discuss this with Mr. Evans?
>
> A.: Yes. Mr. Evans did, in fact, want me to bring out the fact that she had a prior battery and that she was fighting, and I explained to him the ones that we can bring out, which is misdemeanor - - I mean misdemeanor crimes of dishonesty or felony - - and felonies. I also explained to him that we couldn't bring up any of these because, number one, he was not the victim in these cases and, number two, we had nothing to support it.

(Ex. "C," pages 32-33.) Ms. Buncome-Williams testified that she ran a check of Ms. Presha's record to ensure that there were no felony convictions that she was not aware of. (Ex. "C," pg. 33.)

> In light of the testimony of Ms. Buncome-Williams, this Court finds Defendant has failed to establish error on the part of counsel. Ms. Buncome-Williams was not permitted to question Ms. Presha about her criminal record because Ms. Presha only possessed convictions for misdemeanors and the crimes did not involve dishonesty. § 90.610(1), Fla. Stat. (1999). Further, since Defendant elected not to testify that he was defending himself from the victim, Ms. Buncome-Williams was not permitted to use Ms. Presha's convictions to establish that she was the aggressor. There was nothing improper about Ms. Buncome-Williams' decision not to question Ms. Presha about her criminal record. Accordingly, Defendant has failed to demonstrate err[or] on the part of counsel.

Ex. I at 1-2, 4-6.

Petitioner appealed the denial of his Rule 3.850 motion, and the First District Court of Appeal affirmed the trial court's

order, without issuing a written opinion. <u>Evans v. State</u>, 874 So.2d 588 (Fla. 1st DCA 2004) (unpublished table decision). Thus, there are qualifying state court decisions from both the state trial and appellate courts. The Court must next consider the "contrary to" and "unreasonable application" components of the statute. "It is the objective reasonableness, not the correctness <u>per se</u>, of the state court decision that we are to decide." <u>Brown v. Head</u>, 272 F.3d 1308, 1313 (11th Cir. 2001), <u>cert</u>. <u>denied</u>, 537 U.S. 978 (2002).

Upon thorough review of the record and the applicable legal precedent, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state courts' adjudications of the claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Furthermore, the Court finds this claim to be without merit for the reasons stated by the Respondents in their Response. <u>See</u> Response at 7-12. Thus, for all of the above-stated reasons, the Petition will be denied, and this case will be dismissed with prejudice.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. The Petition is **DENIED,** and this action is **DISMISSED WITH PREJUDICE.**

2. The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3. Petitioner's Motion to Hear and Rule (Doc. #23), filed March 6, 2006, is **MOOT.**

4. The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 31st day of March, 2006.

_____
UNITED STATES DISTRICT JUDGE

ps 3/28
c:
Hank Maurice Evans
Assistant Attorney General Bryan Jordan